UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID LOPEZ and MIRIAM TAUBER,

                      Plaintiffs,

– against –

MARCUS JOSEPH MONA (a/k/a MARK MONA),

                      Defendant.

**OPINION & ORDER**

21-cv-8592 (ER)

RAMOS, D.J.:

    David Lopez and Miriam Tauber (together, "Plaintiffs") bring this action against Marcus Joseph Mona (a/k/a Mark Mona) for libel per se and tortious interference.[1] Doc. 1. Before the Court are Plaintiffs' motion for summary judgment as to liability (Doc. 23) and Mona's cross-motion for summary judgment (Doc. 29). For the reasons set forth below, Plaintiffs' motion is DENIED, and Mona's cross-motion is GRANTED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

    The following facts are undisputed.

    Plaintiffs are licensed attorneys in New York. Doc. 33 (Def. Mona's Resp. to Pls.' Loc. Civ. Rule 56.1 Statement) at 1–2. Plaintiffs represent Microbot Medical Inc. in *Microbot Medical, Inc. v. Joseph Mona*, No. 19-cv-3782 (S.D.N.Y.), which is currently pending before Judge George B. Daniels ("the *Microbot* Action"). *Id.* at 3. The *Microbot* Action concerns a claim under § 16(b) of the Securities Exchange Act for recovery of short-swing profits on Microbot shares held by Joseph Mona. *Id.* at 5. Marcus Joseph Mona, defendant in this action, is the son of Joseph Mona, defendant in the *Microbot* Action, and he acted as agent for his father in the management of his father's savings,

---

[1] Plaintiffs stated on reply that they are "dropping" the tortious interference claim. Doc. 39 at 2. Plaintiffs also clarified that they do not bring a separate cause of action for punitive damages, as Mona has alleged; punitive damages are merely an element of the damages sought on the libel per se (and previously the tortious interference) claim. *Id.* The only remaining claim is thus libel per se.

including by engaging in the day trading of Microbot shares on his father's behalf that form the basis for the *Microbot* Action. *Id.* at 3–4. The *Microbot* Action is a direct action brought by Microbot on its own behalf; it is not a shareholder derivative action. 19-cv-3782, Doc. 44 (Second Am. Compl.). Resolving a motion for judgment on the pleadings, a judgment in the amount of $484,614.30 was entered in favor of Microbot against Joseph Mona on March 31, 2021 in the *Microbot* Action. Doc. 33 at 5; 19-cv-3782, Doc. 107 (Clerk's Judgment).[2]

On September 29, 2021, six months after judgment was entered against Joseph Mona in the *Microbot* Action, Marcus Joseph Mona sent Harel Gadot, the chief executive officer and president of Microbot, a message on LinkedIn ("the Message"), which read in whole:

> Harel,
>
> I would like to share with you some vital information that may impact the future viability of Microbot, so I would implore you to read this in its entirety. As you are surely aware, your company is involved in a lawsuit attempting to exploit an 80+ year old (16b "short swing") provision that a myriad of attorneys and legal scholars have widely condemned as archaic, draconian, and unjust  [sic] Please keep in mind that I In [sic] fact lost a substantial sum of money as a large investor in your company (in addition to tens of thousands in attorneys' fees). Yet, perversely, I am the defendant in a lawsuit with no actual injured party (other than myself), which is supposed to be a fundamental precondition for any legal claim. In fact, it is my understanding that the lawyers involved delegated someone to buy a token number of shares in your company "after the fact" with the sole purpose of initiating a lawsuit. This individual couldn't care less about Microbot, has suffered no loss or injury whatsoever, but ostensibly gives the attorneys standing to sue (though this itself is a highly tenuous legal issue). I'm sure you would agree that these circumstances violate the basic principles of fairness.

---

[2] The order granting judgment on the pleadings also dismissed Joseph Mona's counterclaim. 19-cv-3782, Doc. 106. Joseph Mona thereafter amended his answer to replead the counterclaim, and the parties proceeded to discovery on the counterclaim. *See* 19-cv-3782, Doc. 128. Two motions are currently pending in the action: Microbot's motion for summary judgment on the counterclaim and Joseph Mona's motion to dismiss the prior judgment on Microbot's complaint for lack of jurisdiction. 19-cv-3782, Docs. 209, 220.

> *I am reaching out to you because in my opinion, the interests of Microbot and its executives are not equitably aligned with the interests of the attorneys who instigated this lawsuit. Their modus operandi is to exploit this 16(b) provision whenever they have an opportunity, and thus have little to no interest in the fate of Microbot down the road.* Despite the fact that I have lost an appreciable sum of money dealing with this inequitable ordeal, I would be content to settle this matter immediately. Otherwise, in order to defend myself, I will be compelled to bring to light a number of material misrepresentations, for which we have compelling evidence, made by various representatives of the company over the course of my investment. This will also likely entail launching a class action securities fraud claim, potentially involving dozens of litigants with corroborating testimony, [sic] As Microbot shares have collapsed 95% since its post-merger inception, I expect claimants would be eager to join. I believe our case would be even stronger than the Sabby claim against Microbot, which verdict was rendered against you. This in turn may expose Microbot to tens of millions of dollars in liability, years of litigation, significant reputational damage, and restricted access to capital markets. This is not a path I would like to go down, but will have little choice if we can not come to an expeditious, amicable resolution. Might I strongly suggest you discuss this with your management team and Board of Directors, rather than relying on outside counsel who solicited your participation. After all, it's your company's future at stake, not theirs.
>
> Microbot can not be replaced by another shareholder plaintiff should the company decide to resolve the current lawsuit, as the statute of limitations has expired. Thus, the matter is entirely in your hands. From a fiduciary perspective, it seems quite clear than an amicable, expeditious settlement is in both of our best interests.
>
> Sincerely,
> M.J. Mona

Doc. 25-1 (emphasis added). [3]

Approximately three weeks later, on October 19, 2021, Plaintiffs filed the instant suit for libel per se and tortious interference based on the Message. Doc. 1. Mona answered on November 9, 2021. Doc. 12. The Court entered a discovery plan and

---

[3] The Message appears to be based on the mistaken premise that Plaintiffs manufactured standing in the *Microbot* Action by "delegat[ing] someone to buy a token number of shares in [the] company 'after the fact.'" *See* Doc. 25-1. The *Microbot Action* is not a shareholder derivative suit, however; it is a direct action, and the *Microbot* Action plaintiff is thus Microbot itself, not any shareholder directed to purchase a "token number of shares" in Microbot. 19-cv-3782, Doc. 44. *See also* Doc. 25 ¶¶ 23–24.

scheduling order on May 4, 2022, with discovery to close on December 2, 2022.  Doc. 17.  Plaintiffs moved for summary judgment on February 8, 2023 (Doc. 23), and Mona opposed and cross-moved on March 24, 2023 (Doc. 29).

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free School Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might "affect the outcome of the litigation under the governing law."  *Id.* (quoting *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Medical Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted)

4

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

The same legal standard applies when analyzing cross-motions for summary judgment. *See Schultz v. Stoner*, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004) (quoting *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826, 828 (S.D.N.Y. 1996)). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir.1981)). The Court is not required to grant summary judgment in favor of either moving party. *See id.* (citing *Heublein Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

## III. DISCUSSION

As Plaintiffs have abandoned the tortious interference claim, the Court need only consider the cross-motions for summary judgment as to the libel per se claim. "Under New York law, a plaintiff must establish five elements to recover in libel: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000) (citations omitted); *see also* N.Y. Pattern Jury Instructions, NY PJI 3:23B. Statements that tend to injure another in his or her trade, business, or profession—particularly by impugning the plaintiff's ability to perform his or her specific occupation—can be considered libel per se. *Mosha v. Yandex Inc.*, No. 18-cv-5444 (ER), 2019 U.S. Dist. LEXIS 169526, at *18–19 (S.D.N.Y. Sept. 30, 2019) (citing *Pure Power*

*Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011); *Van-Go Transp. Co., Inc. v. N.Y.C. Bd. of Educ.*, 971 F. Supp. 90, 98–99 (E.D.N.Y. 1997)). In such circumstance, special damages need not be pled. *Id.* at *20 (citing *Van-Go*, 971 F. Supp. at 98).

Mona argues that the Message is an opinion, rather than a fact; is not defamatory; and is, in any event, privileged and therefore cannot form the basis of a libel action. Doc. 30 at 14–27. Plaintiffs make few substantive arguments in their principal brief (Doc. 24) and, on reply, largely only recite the elements and conclusorily state each is satisfied (Doc. 39 at 3). Plaintiffs also argue the Message is a provably untrue, malicious accusation of fact that is not privileged. *Id.* at 4–6.

### A. The Message Was "Pure Opinion" and Thus Not Actionable as Libel

"Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Nunes v. NBCUniversal Media, LLC*, No. 22-cv-1633 (PKC), 2022 U.S. Dist. LEXIS 213863, at *11 (S.D.N.Y. Nov. 28, 2022) (quoting *Mann v. Abel*, 10 N.Y.3d 271, 276 (N.Y. 2008)). An unactionable pure opinion can be either (1) "a statement of opinion which is accompanied by a recitation of the facts upon which it is based," or (2) "'an opinion not accompanied by such a factual recitation' so long as 'it does not imply that it is based upon undisclosed facts.'" *Id.* at *11–12 (quoting *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (N.Y. 2014)). In other words, only where a statement of opinion (as opposed to one of purely fact) implies it is based upon facts that are unknown to the reader is it an actionable "mixed opinion." *Id.* at *12 (citing *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (N.Y. 1986)). Thus, the key difference between an actionable mixed opinion and an unactionable pure opinion is whether there exists an implication that the speaker knows facts, which the audience does not, that support the speaker's opinion and are detrimental to the person being discussed. *Id.* (citing *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (N.Y.

2014)). The distinction between fact and opinion is an issue of law for the court. *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 66 (S.D.N.Y. 2021).

New York courts weigh three factors to determine whether a communication is an actionable fact or mixed opinion, all of which look to the full content and context of the communication:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Id.* (citation omitted). In determining if the communication is unactionable opinion, the Court must look to the "overall context" of the entire communication (its complete content, tone, and apparent purpose) to determine whether the communication may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion. *See Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014). Courts should not parse through the communication to analyze individual statements therein. *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 719 (S.D.N.Y. 2014). Thus, "[e]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole." *Fairstein*, 553 F. Supp. 3d at 66–67 (quoting *Steinhilber*, 68 N.Y.2d at 294).

Here, Plaintiffs particularly identify the following two sentences of the Message as the provably untrue facts that can be actionable bases for defamation:

> I am reaching out to you because *in my opinion*,[4] the interests of Microbot and its executives are not equitably aligned with the

---

[4] Mona's use of the phrase "in my opinion" is not dispositive because merely prefacing what is otherwise a statement of fact with language such as "I believe" will not necessarily render it a statement of opinion or otherwise immunize the author from liability for defamation.. *Goldfarb v. Channel One Russia*, No. 18-cv-

7

> interests of the attorneys who instigated this lawsuit. Their modus operandi is to exploit this 16(b) provision whenever they have an opportunity, and thus have little to no interest in the fate of Microbot down the road.

Doc. 39 at 4 (emphasis added). Mona, however, argues that the statements in the Message are incapable of being proven true or false, and the context of the Message makes clear that it was opinion. Doc. 30 at 14–20.

The Court finds that the Message is unactionable as "pure opinion" because it does not imply it is based on undisclosed facts, and the overall context of the Message makes clear it is an opinion. The first factor of the three-part test looks to whether the words and phrases in the Message have a precise meaning, as opposed to being "loose, figurative, hyperbolic, or vague." *See Restis*, 53 F. Supp. 3d at 720. Here, the Message discusses whether § 16(b) of the Securities Exchange Act (the law on which the *Microbot* Action is based) is "archaic, draconian, and unjust," whether suit against Mona is "perverse[]" and "inequitable," and the *Microbot* Action (including Plaintiffs' behavior in prosecuting it) "violate[s] the basic principles of fairness." Doc. 25-1. Even the two-sentence excerpt that Plaintiffs identify as the primary basis for the libel claim discusses Plaintiffs' interest in terms of "equitabl[e] align[ment]." *Id.* Such language is vague and hyperbolic, and this factor accordingly weighs against finding the Message to be actionable. *See Restis*, 53 F. Supp. 3d at 720.

The second factor looks to whether the Message can be proven true or false. Here, the first paragraph is provable. *See* Doc. 25-1. It addresses, as evidence of the unfairness of the *Microbot* Action, the amount of money Mona lost trading Microbot stock and the process by which Plaintiffs came to represent Microbot in the *Microbot* Action. *See id.* Mona's net gains and losses are calculable, and it can be established whether Plaintiffs did or did not "delegate[] someone to buy a token number of shares in

---

8128 (JPC), 2023 U.S. Dist. LEXIS 48010, at *47–48 (S.D.N.Y. Mar. 21, 2023) (citing *Thomas H. v. Paul B.*, 965 N.E.2d 939, 943 (N.Y. 2012)). Although such language may be *a* factor in finding a statement to be one of opinion, additional indicia are required. *Id.*

[Microbot] . . . with the sole purpose of initiating a lawsuit" and manufacturing standing. *See id.* The first two sentences of the second paragraph of the Message, which are Plaintiffs' particular focus, concern Plaintiffs' "modus operandi" of exploiting § 16(b) and allege that Plaintiffs' interests are not "equitably aligned" with those of Microbot. *See id.* Insofar as these allegations echo the statements in the first paragraph that Plaintiffs allegedly manufactured standing, these two sentences are also provable. But any broader and more vague conclusions about Plaintiffs' interests and modus operandi generally are not. And the remainder of the Message (*i.e.*, from the third sentence of the second paragraph until the end) is pure speculation as to the possible success of a hypothetical class action securities fraud against Microbot. *Id*. Unless and until such a class action suit is actually brought, this second half of the Message cannot be proven true or false. *See Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) ("When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact." (citation omitted)). This factor thus weighs in favor of finding the Message "mixed opinion," though it does not preclude finding that the Message is unactionable depending on the context in which the allegedly factual assertions were made. *See Fairstein*, 553 F. Supp. 3d at 74–75.

Finally, the third factor analyzes the social context of the Message, its surrounding circumstances, tone, and complete content to consider whether "the average person exposed to the [Message] in its full context" would understand it to be opinion. *Id.* at 66. At bottom, in light of the *Microbot* Action, the Message was a civil defendant's attempt to sow distrust between the plaintiff suing him and its attorney for the purposes of minimizing the damages award against him, as the social context and complete content of the Message make clear. *See* Doc. 1 ¶ 26, Doc. 39 at 2. The backdrop of the Message is the *Microbot* Action. *See* Doc. 25-1. "[W]here circumstances surrounding an allegedly defamatory statement indicate that the person making the statement has a special interest

9

in the matter, courts have routinely held that a reasonable observer would understand such a statement to be one of opinion, rather than fact." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 296 (E.D.N.Y. 2015) (citation omitted). Thus, in circumstances such as contentious litigation, audiences can anticipate the use of epithets and hyperbole. *See id.* (granting summary judgment for defendant in defamation claim based on defendant public relations manager's comments on an online forum, which alleged that a law firm representing plaintiffs in a separate suit against the manager's client was opportunistic and known for fraudulent litigation). Moreover, nowhere in the Message does Mona imply that he relied on any undisclosed facts to reach his conclusion that the *Microbot* Action is fundamentally unfair, and Plaintiffs' interests are "not equitably aligned" with Microbot's. *See* Doc. 25-1. Rather, he makes clear that such conclusion is based on his understanding of how Plaintiffs came to participate in the *Microbot* Action—*i.e.*, their "modus operandi" of "exploit[ing]" § 16(b) and manufacturing standing. *See id.*

It is also worth noting that Mona couches many of his sentences with phrases like "it is my understanding that," "I'm sure you would agree that," "in my opinion," "I believe." Doc. 25-1. Indeed, even the specific two sentences of the Message with which Plaintiffs specifically take umbrage explicitly state "*in my opinion*, the interests of Microbot and its executives are not equitable aligned . . . ." Such language signals that the statement is an opinion. *See Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 179 (S.D.N.Y. 2021) (citing *Chau v. Lewis*, 935 F. Supp. 2d 644, 660 (S.D.N.Y. 2013) (collecting cases in which language such as "I believe" or "I'd say" signaled opinion)). Of course, a defamatory statement of fact will not be immunized merely by prefacing it with "I believe," without any other indicia that the statement is opinion. *Goldfarb*, 2023 U.S. Dist. LEXIS 48010, at *47–48 (citing *Thomas H.*, 965 N.E.2d at 943). But, here, the ample other signals that the Message is opinion, in addition to the phrase "in my opinion," is sufficient to find that the Message is unactionable opinion.

Accordingly, the third factor also weighs against actionability. *See Fairstein*, 553 F. Supp. 3d at 66–67 (citing *Steinhilber*, 68 N.Y.2d at 294); *Bellavia*, 151 F. Supp. 3d at 296. Thus, the Message is not reasonably understood to imply that it is based on undisclosed facts, and it is not actionable as opinion. *See Bellavia*, 151 F. Supp. 3d at 296. On this basis alone, the Court must grant Mona summary judgment.

### B. The Court Cannot, on Summary Judgment, Deem the Message Defamatory

Mona further argues that, even if the Message was actionable, it was not defamatory. Doc. 30 at 20–24. Initially, the determination whether the Message is libel per se as disparagement of Plaintiffs' professional reputation rests with the court as a question of law. *Zeevi v. Union Bank of Switzerland*, No. 89-cv-4637 (KMW), 1993 U.S. Dist. LEXIS 5760, at *12-13 (S.D.N.Y. Apr. 15, 1993) (citing *Julian v. American Business Consultants, Inc.*, 155 N.Y.S.2d 1, 17 (N.Y. 1956)). But a court may deem a writing libelous per se on summary judgment "only if the court concludes that the words are susceptible to only one interpretation" (*i.e.*, the defamatory one plaintiff ascribes to it). *Id.* (citing *James v. Gannett Co.*, 386 N.Y.S.2d 871, 874 (N.Y. 1976)). Here, the Court does not find that the only interpretation to which the Message is susceptible is defamatory. On the one hand, the Message could be read as an accusation that Plaintiffs abdicated their professional ethical responsibilities to Microbot insofar as it alleges Plaintiffs manufactured standing in the case for their own benefit. *See* Doc. 25-1. But it could also be read as a condemnation of the unfairness of the law that permits standing to be manufactured and enables Mona's prosecution under § 16(b) notwithstanding the funds he lost trading Microbot stock. *See id.* Accordingly, the Court cannot determine whether the message was defamatory on summary judgment.

### C. The Message Was Not Privileged

Finally, Mona argues that even if the Message was actionable fact or mixed opinion and was defamatory, the Message was nonetheless privileged because (1) Mona

11

and Gadot (the recipient of the message) shared a common interest and (2) the Message was made in anticipation of litigation. Doc. 30 at 24–27; Doc. 41 at 7–8 (citing *Yong Ki Hong v. KBS America, Inc.*, 951 F. Supp. 2d 402, 436 (E.D.N.Y. 2013)). Plaintiffs argue that neither privilege applies here, nor generally in a libel case. Doc. 39 at 6. The Court agrees that neither privilege applies.

1. *Common Interest Privilege*

A qualified privilege exists to protect even defamatory statements "when a person makes a bona fide communication upon a subject in which he or she has an interest, or a legal, moral, or social duty to speak, and the communication is made to a person having a corresponding interest or duty." *Yong Ki Hong*, 951 F. Supp. 2d at 433 (quoting *Silverman v. Clark*, 35 A.D.3d 1, 10 (N.Y. App. Div. 1st Dep't 2006)). Courts recognize the privilege exists in instances where "the good that may be accomplished by permitting an individual to make a defamatory statement without fear of liability outweighs the harm that may be done to the reputation of others." *Boehner v. Heise*, 734 F. Supp. 2d 389, 399 (S.D.N.Y. 2010) (quoting *Garson v. Hendlin*, 141 A.D.2d 55, 61 (N.Y. App. Div. 2d Dep't 1988)). New York courts apply the privilege on a case-by-case basis. *Id.* (citing *Gay v. Carlson*, 60 F.3d 83, 88 (2d Cir. 1995)).

Thus, the New York Court of Appeals has upheld the application of privilege for communications between employees of an organization, board members of a tenants' association, between a college administrator and members of a faculty tenure committee, and between constituent physicians of a health insurance plan. *Silverman*, 35 A.D.3d at 10; *Patton v. Egan*, No. 12-cv-2500 (LGS), 2014 U.S. Dist. LEXIS 132098, at *24–25 (S.D.N.Y. Sep. 18, 2014). In each situation, although the parties may have had opposing positions or viewpoints, the statements were made in furtherance of the shared organization's common interest—*i.e.*, the business, board, or committee. *See Patton*, 2014 U.S. Dist. LEXIS 132098, at *24–25. But the privilege does *not* apply where the parties' interests merely coincide rather than overlap. Thus, a common interest does not

exist where two attorneys dispute the amount of attorneys' fees allocated to each of them from a client's recovery. *Silverman*, 35 A.D.3d at 10. Even though both sought to maximize the client's recovery and thus the pot of money from which fees would be distributed, their interest was in maximizing their *individual* recoverie*s* for their respective firm, which was not was shared. *Id.* Courts also hesitate to apply the privilege where the communication does not serve an important "public or societal interest." *Id.* at 11 (citations omitted).

Here, the defendant in the instant action acted as the agent of the defendant in the *Microbot* Action, which is ongoing. Although the defendant here and the chief executive of Microbot may have a common interest in the expedient resolution of the *Microbot* Action, their interests in that litigation were directly contrary to each other, no matter that the Message attempted to paint their interests as aligned. *See id.* at 10 (holding that, where one party's increased recovery necessarily comes at the expense of the other's, no common interest privilege arises between them). Accordingly, the common interest privilege does not apply.

2. *Privilege as to Pre-Litigation Statements*

Finally, Mona argues the qualified privilege for pre-litigation statements applies to the Message insofar as he sought to obviate the need to bring a securities fraud class action against Microbot. Doc. 30 at 27 (citing *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 719 (N.Y. 2015)). But such privilege is meant to allow attorneys and parties to "communicate in order to reduce or avoid the need to actually commence litigation," such as through cease-and-desist letters. *Front, Inc.*, 24 N.Y.3d at 719–20. And, the privilege applies only to good faith anticipated litigation; it does not apply to those "seeking to bully, harass, or intimidate . . . adversaries by threatening baseless litigation or by asserting wholly unmeritorious claims." *Id.* at 720; *see also Giuffre v. Maxwell*, No. 15-cv-7433 (RWS), 2017 U.S. Dist. LEXIS 64405, at *23 (S.D.N.Y. Mar. 27, 2017) ("The pre-litigation privilege is intended to protect attorneys from defamations claims so that those

13

discharging a public function may speak freely to zealously represent their clients without fear of reprisal or financial hazard. Where the statement cannot be attributed to an attorney, there is no justification for protecting it by privilege." (internal citation and quotation marks omitted)).

Here, it is clear that defendant Mona in the instant action was threatening to bring a securities fraud class action if the *Microbot* Action did not resolve favorably to his father, the defendant in that action. But favorable resolution of the *Microbot* Action would not obviate or in any way effect the viability of a securities fraud action. The Message is thus unlike a cease-and-desist letter where compliance with the letter's demand would moot the need for litigation. *See Front, Inc.*, 24 N.Y.3d at 719–20. Accordingly, this privilege too is inapplicable.[5]

Thus, the Message was not privileged. Because, however, the Message was opinion and thus not actionable, the Court grants Mona's cross-motion for summary judgment and denies Plaintiff's motion for summary judgment.

IV. **CONCLUSION**

For the reasons set forth above, Plaintiffs' motion for summary judgment is DENIED, and Mona's cross-motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 23 and 29, and close the case.

It is SO ORDERED.

Dated:   June 26, 2023
         New York, New York

EDGARDO RAMOS, U.S.D.J.

---

[5] Moreover, Plaintiffs' claim for libel per se is predicated primarily, not on the portion of the Message concerning the threatened class action, but on those aspects of the Message concerning Plaintiffs, so any privilege as to the class action portion is beside the point.